**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Bankruptcy Case No. 21-31539 (KAC) |
| Local Motion MN, LLC | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Local Motion MN, LLC. | Adversary Case. No. 22-03018 (KAC) |
| Plaintiff, | |
| v. | |
| David Seeley, | |
| Defendant. | |

**RESPONSE OF DAVID SEELEY IN OPPOSITION TO**
**EXPEDITED MOTION FOR PRELIMINARY INJUNCTION**

David Seeley ("Seeley") submits this response in opposition to the Debtor's Expedited Motion for Preliminary Injunction (the "Motion"), as the Debtor is not entitled to the relief it seeks.

**INTRODUCTION**

The Debtor's Motion falls well short of satisfying the high burden of proof necessary to justify extraordinary injunctive relief against Seeley. Supported only by a sparse record consisting largely of disjointed text messages and a few other documents, the Debtor fails to establish *any* irreparable harm, let alone any of the other required *Dataphase* factors. At best, the Debtor largely raises concerns about what *might* happen, and any allegations of actual harm (*if* proven true) can be easily remedied by legal relief in the form of monetary damages, which precludes injunctive relief.

Moreover, the Debtor fails to even address the likelihood of success element for the one cause of action asserted in its Complaint—tortious interference with contract.

The Debtor's Motion must be denied for at least five reasons. *First*, this Court lacks jurisdiction to consider this post-confirmation Motion.[1] *Second*, even if jurisdiction exists, the expedited relief sought by the Debtor is not warranted. *Third*, the Debtor falls woefully short of proving the threshold legal requirement of irreparable harm, both because a) there is no showing of irreparable harm, and b) any allegation of harm that may exist can be remedied with monetary damages. *Fourth*, while failure to establish irreparable harm by itself precludes injunctive relief, the Debtor completely fails to establish any of the other *Dataphase* factors. *Fifth*, the proposed injunctive relief—requesting that Seeley be "enjoined from having any control over the Debtor"—is so general and vague that it is not enforceable under controlling law.

For all of these reasons, Debtor's Motion should be denied, and Seeley should be permitted to fully respond to the Complaint in due course.

## DISCUSSION

### I.    THE COURT LACKS JURISDICTION TO HEAR THIS MOTION.

Generally, once a bankruptcy debtor's reorganization plan has been confirmed, "the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist." *Norwest Equip. Fin., Inc. v. Nath* (*In re D & P Partnership*), 91 F.3d 1072, 1074 (8th Cir.1996); *see also Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991) (ordering dismissal for want of jurisdiction of debtor's

---

[1] As a preliminary matter, based on the procedural posture of this adversary case, Seeley has the right to challenge the jurisdiction of this Court over this matter pursuant to Fed. R. Civ. P. 12, incorporated herein by Fed. R. Bankr. P. 7012, as well as to challenge whether this is a core proceeding under Fed. R. Bankr. P. 7008. Those challenges are not yet due from Seeley as his time to answer or otherwise respond to the Complaint is weeks away. Seeley reserves the right to contest the jurisdiction of this Court as part of his response to the Complaint, and by responding to this Motion, does not waive any jurisdictional challenge.

2

post-confirmation suit to enjoin claims against it, and stating that: "Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The [debtor] also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.").

"Because a bankruptcy court's jurisdiction is limited post-confirmation, the party seeking to establish post-confirmation jurisdiction must meet two requirements: (1) a close nexus to the bankruptcy case; and (2) the plan must provide for jurisdiction." *In re Wigley*, 624 B.R. 861, 868 (Bankr. D. Minn. 2021) (Fisher, J.), *citing In re Ener1*, *Inc*., 558 B.R. 91, 96 (Bankr. S.D.N.Y. 2016). With respect to the instant matter, the Debtor's Second Modified Plan of Reorganization Under Subchapter V of Chapter 11 (the "Plan") [ECF 109] provides as follows:

> 8.6 Court to Retain Jurisdiction.  After he Effective Date, this Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to the Debtor's bankruptcy case or this Plan pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code among other things, to: determine any and all disputes relating to administrative expenses, claims and equity interest, including the allowance and amount thereof; enforce or interpret the provisions of the Plan or the order confirming the Plan; determine any and all disputes; consider and allow any and all applications for compensation for professional fees; determine any and all applications, motion, adversary proceedings and contested or litigated matters pending on the Effective date and arising in or related to the Plan; remedy any defect or omission or reconcile and inconsistency in this Plan; issue such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; hear any other matter not inconsistent with the Bankruptcy Code; and enter a final decree closing the Debtor's bankruptcy case.

*See* Plan at Art. 8 § 6 [ECF 109].

3

**A.      These claims do not have a close nexus to the Bankruptcy Case.**

Here, despite clear admissions that the conduct the Debtor seeks to enjoin has occurred "since confirmation of the Debtor's Plan,"[2] the Debtor nonetheless invokes the jurisdiction of the Bankruptcy Court to assist it with an internal shareholder dispute. Though the Debtor advances the rationale that this dispute generally affects the ability of the Debtor to reorganize, such an interpretation is overly broad and would require the Bankruptcy Court to exercise jurisdiction over any matter, however small or large, to the extent it affected the operation of the post-confirmation Debtor in any way.  Further, it is clear that this action for tortious interference could have existed entirely apart from the bankruptcy proceeding, and does not at all depend on any resolution of a substantial question of bankruptcy law, militating against the exercise of jurisdiction. *See In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010) (citations omitted).

Additionally, the burden to demonstrate the close nexus falls upon the Debtor, which has made no such allegations other than by vague references to its continued reorganization efforts. (Motion ¶ 26.) This is insufficient to establish the Court's authority over this matter. *See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009) ("The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction[.]").  The Court should decline to exercise jurisdiction over this Motion—or in the alternative, should postpone any such determination until such time as Seeley has had the opportunity to respond to the Complaint in accordance with the applicable rules of civil procedure.

---

[2] *See* Motion at ¶ 10, p. 3 of 31 [ECF 7].

4

## II.   EXPEDITED RELIEF IS NOT WARRANTED.

The Debtor sets forth in its memorandum in support of the Motion that, absent the injunction it seeks, Seeley's actions will cause the Debtor "great financial hardship." (Memo p. 8) Notably, the Debtor alleges only that. There is no recitation of the manner of the financial hardship to be suffered other than by way of conjecture and speculation. To be sure, the Debtor's only allegation regarding realizable financial consequences is an unfounded allegation that Seeley has stolen funds in an amount less than $7,000.[3]  (Motion ¶ 21, p. 4.)

Further, there is no assertion that the passage of an additional week's time will so greatly prejudice the Debtor that the normal time-frame for a response (9 days) should be obviated. *See* Local Rule 9006-1. The Debtor makes numerous spurious and unsupported allegations against Seeley based largely on disjointed and unauthenticated text messages, and then seeks to truncate the time Seeley has to respond—all the while having filed a Complaint containing identical allegations, a response to which is not due until September 6, 2022.

The Debtor has failed to demonstrate exigent cause to warrant expedited relief.  Accordingly, its request for expedited relief should be denied, and this matter should be placed on for hearing on regular notice.

## III.   LEGAL STANDARD FOR PRELIMINARY INJUNCTION

Preliminary injunctive relief is a "drastic and extraordinary remedy [which] is not to be routinely granted." *Taxpayer's Choice Volunteer Comm'n v. Roseau Cty. Ed. of Comm'rs*, 903 F. Supp. 1301, 1307 (D. Minn. 1995) (internal quotation omitted).  As the moving party, Plaintiff bears the "complete burden" of proof on all four factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414,

---

[3] Moreover, Seeley notes that these claims of "financial hardship" or missing funds can necessarily be remedied at law with an award of monetary damages and do not support extraordinary injunctive relief irrespective of the timing of the Motion. *See Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 798 (D. Minn. 2010).

418 (8th Cir. 1987). In deciding whether to issue a preliminary injunction, the district court considers four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). "No single factor is dispositive, as the [court] must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

## IV.     THE DEBTOR HAS NOT MET ITS BURDEN WITH RESPECT TO THE MOTION.

### A.     The Debtor Cannot Establish Irreparable Harm and the Motion Should be Denied on that Ground Alone.

To prevail with respect to a motion for a preliminary injunction, the burden is on the movant to demonstrate that "irreparable injury is likely in the absence of an injunction." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Irreparable harm occurs when a party has no adequate remedy at law." *General Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The burden for establishing irreparable harm is difficult to meet. *See Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996) ("[A] party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."). Speculative harm does not support a preliminary injunction. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1019 (8th Cir. 2022), *citing MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020).

The absence of irreparable harm "is an independently sufficient ground upon which to deny a preliminary injunction." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016). "Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp.*

6

811 F.2d at 420. A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). As the U.S. Supreme Court stated in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22-23.

### 1.    Debtor has Failed to Meet its Strict Burden of Proving Irreparable Harm.

Here, the Debtor has set forth a panoply of alleged conduct in which Seeley has purportedly engaged. (*See* Motion, generally.) However, the vast majority of the alleged conduct involves actions construed by the Debtor as "attempts" by Seeley—confirming that the actions purportedly taken by Seeley were unfruitful, and that Debtor has not suffered *any* actual harm, let alone *irreparable* harm. (*Id*.)

For example, the Debtor alleges that Defendant unilaterally served a cease-and-desist letter on the Debtor's website host claiming it was wrongfully using intellectual property owned by Seeley. (Motion ¶ 12.) But the Debtor does not allege that it was harmed in any way by the conduct, instead arguing that the alleged demands by Seeley upon the vendor were inaccurate based on the Debtor's interpretation of a state court receivership order related to Seeley (an order to which the Debtor is not a beneficiary). Further, the Debtor mitigated any potential harm to it by reaching out to the vendor itself and assuaging the vendor's concerns in that regard. (Motion Ex. A – 003.) Thus, the Debtor has not, and cannot, demonstrate that it has been harmed in an irreparable way—especially, by its own estimation, as it has "repaired" any purported harm.

The Debtor additionally alleges that Seeley "used his position with the Debtor to repeatedly shut down access to email by the other owners and employees" and that such actions have "cost the

7

Debtor company sales and revenue opportunities." (Motion ¶¶ 11, 23.) In support of these scant contentions, the Debtor offers only three text message lines from Justin Christensen that stand only for the assertion that he, himself, did not have access to his email on certain days.  (Motion Ex. A, pp. 8, 10.) The Debtor sets forth no indication of the manner in which sales and revenue opportunities were lost, nor does the Debtor specify the extent or nature of such lost opportunities.[4] The Debtor has provided not one scintilla of evidence, of any kind, that Seeley was in any way responsible for any such technical issues being reportedly suffered by Mr. Christensen or other employees of the Debtor. Such bare and nebulous contentions are insufficient to demonstrate any harm, much less harm as to which the Debtor has no legal remedy.

It is the Debtor's burden to establish the requisite level of irreparable harm. Debtor's deluge of conclusory allegations of speculative consequences based on scant evidence fall well short of meeting this strict burden. As a result, Plaintiff's Motion should be denied on this basis alone. *See Gelco Corp.* 811 F.2d at 420.

### 2.      Any Alleged Harm can be Remedied with Damages.

To succeed in an action for a preliminary injunctive relief, a movant must first show irreparable harm that is not compensable with money damages. *Travel Tags*, *Inc*. *v*. *UV Color*, *Inc*., 690 F. Supp. 2d 785, 798 (D. Minn. 2010). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen*. *Motors Corp*. *v*. *Harry Brown's*, *LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  Here, **by its own admission,** Debtor clearly has a remedy at law for its claim of tortious interference—an

---

[4] Seeley notes here again that such alleged lost opportunities undoubtedly have an ascertainable monetary value, and the appropriate remedy for such claims is monetary damages, not injunctive relief. *Travel Tags*, *Inc*., 690 F. Supp. 2d, at 798.

award of damages including attorneys' fees. Accordingly, injunctive relief is not available to the Debtor as a matter of law.

The only potentially viable cause of action asserted in the Debtor's Complaint is for tortious interference with contract, which requires a proof of "damages."[5] *E–Shops Corp. v. U.S. Bank Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012). The Debtor expressly seeks an award of "damages incurred due to the actions by Defendant." (*See* Complaint ¶ 32.) The only specific damages alleged in the Complaint for tortious interference are "attorney fees to bring this instant action." Obviously, "attorney fees" or any other "damages" can be compensated at law with money damages. Accordingly, because monetary damages will compensate the Debtor for any alleged losses, the extraordinary equitable relief of an injunction is not available here as a matter of law. *Travel Tags, Inc.*, 690 F. Supp. 2d at 798 (holding that moving party "…must demonstrate that without injunctive relief, it is likely that it will be injured and that such injury will not be compensable by monetary damages if it prevails on the merits.").

**B.      The Balance of Harm Favors Mr. Seeley.**

When considering the balance of harms aspect of the *Dataphase* analysis, courts must weigh "the threat to each of the parties' rights and economic interests that would result from either granting or denying the preliminary injunction." *Katch*, *LLC v. Sweetser*, 143 F. Supp. 3d 854, 875 (D. Minn. 2015), *citing Cenveo Corp. v. S. Graphic Sys., Inc.*, No. 08–cv–5521 (JRT/AJB), 2009 WL 161210, at *4 (D. Minn. Jan. 22, 2009). The goal is to assess the harm the movant would suffer absent an injunction, as well as the harm other interested parties would experience if the injunction issued. *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir.1994)

---

[5] Debtor also alleged "Preliminary Injunction" as "Count One" of its Complaint, but this is a remedy, not a standalone cause of action. *See* Calvin *Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir.1987) (describing a preliminary injunction as an "extraordinary remedy").

In support of its argument that the balance of harm swings in its favor, the Debtor conclusorily argues that Seeley would "benefit from the continued operations of the Debtor and its reorganization," implying that the granting of the injunction could not harm him. (*See* Memo § B(2), p. 9 of 31.) However, it is precisely here where the rubber meets the road. At bottom, what exists here is a shareholder dispute regarding the management and organization of the reorganized Debtor. As will be further set forth in his response to the Complaint, Seeley contends that the majority ownership of the Debtor is self-dealing, embezzling funds, and otherwise acting to the detriment of the Debtor. In that regard, the continued operations of the Debtor—along its current "reorganized" trajectory—do not provide him, or the Company, with any benefit whatsoever, despite the Debtor's self-serving assertions to the contrary.

Specifically, the Debtor acknowledges that Seeley is an owner of the Company. Further, and as the Debtor (via Mr. Rittenhouse) has attested under oath in the bankruptcy case at the meeting of creditors, Seeley is the president of the Debtor. Seeley has historically managed the information technology systems of the Debtor, as well as its electronic payment integration systems. If, in fact, Seeley's assertions of malfeasance by the Debtor's management are true (which should be determined on the merits, and on a full record), then permitting such operations to continue will undoubtedly result in the dissipation, or, at a minimum, reduction, in the value of the Company, and thus, the value of Seeley's interest as well.

It is important to note here that Mr. Seeley is the founder of the company—the tactics and gamesmanship employed by the current management over the last number of years notwithstanding. His goals are to maximize its value—not to strip it bare and abscond. Further, Seeley may have obligations to the Company not to acquiesce with respect to the conduct he will allege continues to transpire within the Debtor, as he, as an acknowledged officer of the company, likely has fiduciary

duties of his own to uphold.  At a minimum, the Debtor has failed to carry its burden to establish that the balance swings in its favor, thus the Motion should be denied.

### C. The Debtor has not established a likelihood of success on the merits.

To prevail on this prong of the requisite legal analysis, the Debtor must demonstrate that it has a likelihood of success on the merits of its claims. *Dataphase Sys., Inc.*, 640 F.2d at113. To demonstrate such a likelihood, the movant must demonstrate that it has a "fair ground" for litigation with respect to its claims against Seeley. *Sleep No. Corp.*, 33 F.4th at 1017, *citing Watkins Inc.*, 346 F.3d at 844.  To succeed on a tortious interference with contract claim, Debtor must show: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn.1982).

Yet, in addressing this element, the Debtor *does not even reference* the tortious interference claim asserted against Seeley in its Complaint. (*See* Memo § B(3), p. 9 of 31.) Instead, the Debtor contends that, in the context of an injunction in a bankruptcy case such as this, the "likelihood of success" prong of the injunction test is necessarily met as the Debtor has already confirmed a plan of reorganization. By focusing solely on the probability of a successful plan of reorganization, the Debtor has ignored the likelihood of success element on the very claim it has advanced in its Complaint against Seeley (tortious interference), which serves as the sole basis for the proposed injunction.[6]  This circular logic leads to the unavailing conclusion that an injunction is always proper

---

[6] Importantly, the only authority cited ultimately by the Debtor for this argument is a Florida Bankruptcy Court decision from 1985 that dealt with a request for an injunction against a creditor related to its efforts to secure essential property of the Debtor's business necessary for its operations to continue *prior to confirmation*. Without it, the Debtor could not confirm a plan. The *Kasual Kreation* Court did not address a post-confirmation injunction. *In re Kasual Kreation, Inc.*, 54 BR 915 (Bankr. S.D. Fla. 1985).

with respect to any conduct related to a reorganized debtor—a truly untenable proposition without any legal support.

The proper inquiry here is whether the Debtor has demonstrated a likelihood of success on the merits of this adversary case—i.e., to prevail on its claim of tortious interference against Seeley. To that end, the Debtor has not even attempted to meet that burden.  Importantly, the claims of the Debtor have only recently been made, and Seeley is not yet required to answer or otherwise respond to the allegations pursuant to the rules of civil procedure. But, as the Debtor acknowledges in its own pleadings, Seeley has no interest in acting to the detriment of the company he founded. (*See* Memo § B(2), p. 9 of 31.) Thus, the Debtor freely admits Seeley's alleged conduct, even if it occurred as alleged, was not undertaken with the requisite intent to establish a tortious interference claim. *See Furlev Sales & Assocs*., *Inc*., 325 N.W.2d at 25 (stating that the interference must be intentional to be actionable). The likelihood of success factor strongly favors Mr. Seeley as the Debtor has simply failed to address its claim for tortious interference within the Motion.  As such, the Debtor's Motion must fail.

> **D.      The Public interest is not at issue here, and the Debtor has submitted no evidence to demonstrate that the relief it seeks will promote the same.**

With respect to the final prong of the *Dataphase* injunction analysis, the Debtor seeks to conflate the clear public interest in permitting Debtors to reorganize their debts in a bankruptcy case with the facts of this case.  However, the Debtor's argument is unavailing. The Debtor's claims have nothing to do with whether the Debtor will have a successful reorganization—it has already confirmed its plan and has professed to be enjoying the benefits of its reorganization. (*See* Memo § B(3), p. 9 of 31.) Further, and once again, the authority cited by the Debtor for this proposition involved an injunction sought *prior to* confirmation regarding actions taken by a creditor related to property essential (or important) to the feasibility of the proposed (and not yet confirmed) plan. *In re*

12

*Lazarus Burman Assocs*., 161 B.R. 891, 897 (Bankr. E.D.N.Y. 1993). The Debtor does not submit

any authority for the interest of the public in the internal disputes between shareholders within the

ranks of a reorganized debtor. Ultimately, whether or not the Debtor is able to resolve its internal

shareholder disputes and resolve its contractual issues related to its intellectual property matters is

wholly irrelevant to the public—and the Debtor has put forth no authority to the contrary, thus

failing to meet its burden to demonstrate the public interest factor.

**V.      THE RELIEF SOUGHT BY THE DEBTOR IS BROAD AND UNSPECIFIC, RENDERING INJUNCTIVE RELEIF AS REQUESTED, IMPERMISSIBLE.**

Debtor's motion seeks broad and vague injunctive relief, which is unenforceable because it

fails to sufficiently specify precisely what conduct is being enjoined. Specifically, Debtor seeks the

following preliminary injunction:

> The Defendant is temporarily enjoined from having any control over the Debtor, including but not limited to URL(s), email server(s), social media accounts, bank accounts, financial accounts, phone system, credit card processor, and credit card gateway.

(*See* Proposed Order, ¶ 2.)

Federal Rule 65 (incorporated herein by Fed. R. Bankr. P. 7065) requires specificity

regarding the conduct to be enjoined:

> (d) Contents and Scope of Every Injunction and Restraining Order.
>
>> (1) Contents.
>>
>> Every order granting an injunction and every restraining order must:
>>
>>> (A) state the reasons why it issued;
>>>
>>> (B) *state its terms specifically*; and
>>>
>>> (C) *describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required.*

Fed. R. Civ. P. 65(d) (emphasis added).

13

The requirements of specificity and detail in injunctive orders are "no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). Instead, those requirements are "designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing." *RPR v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 517 (8th Cir. 1996) (quotation omitted); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) (citing *Schmidt*, 414 U.S. at 476-77).

An injunctive order that lacks sufficient specificity or detail is invalid. *See E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1117 (8th Cir. 1969); *see also Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 517 (8th Cir. 1996) (vacating as vague portion of district court order that stated "Rhone-Poulenc should take necessary steps to advise sales representatives, physicians, pharmacists and patients of ... the food effect associated with Dilacor XR").

By requesting that Mr. Seeley be broadly enjoined from "having any control over Debtor," the Debtor has failed to sufficiently specify the particular actions that would be subject to the injunction, making enforcement all but impossible. Therefore, the Debtor's Motion should be denied because the proposed injunction it seeks would be an open-ended invitation for "contempt citations on an order that is too vague to be understood." *Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 93 F.3d at 517.

## CONCLUSION

Assuming the Court determines it has jurisdiction, the Debtor has failed to meet its strict burden of establishing the threshold requirement of irreparable harm, or any of the other elements necessary to justify the extraordinary remedy of a preliminary injunction. Further, the breadth and

ambiguity of the injunction it seeks is impermissible.  As such, the Motion should be denied, and

Seeley should be granted such relief as is just and equitable.

Respectfully submitted,

**BASSFORD REMELE**
*A Professional Association*

Dated: August 18, 2022                    By:   */e/  Jeffrey D. Klobucar*
                                                        Kevin P. Hickey (#202484)
                                                        Jeffrey D. Klobucar (#0389368)
                                                        100 South Fifth Street, Suite 1500
                                                        Minneapolis, MN  55402
                                                        Telephone: (612) 333-3000
                                                        Facsimile: (612) 333-8829
                                                        Email: khickey@bassford.com
                                                                   jklobucar@bassford.com

**Attorneys for Defendant David Seeley**

15

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Bankruptcy Case No. 21-31539 (KAC) |
| Local Motion MN, LLC | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| Local Motion MN, LLC. | Adversary Case. No. 22-03018 (KAC) |
| Plaintiff, | |
| v. | |
| David Seeley, | |
| Defendant. | |

**UNSWORN DECLARATION FOR PROOF OF SERVICE**

I, Jeffrey D. Klobucar, an attorney licensed to practice law in this Court, with an office address of 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402 declare that on August 18, 2022, I caused the following documents:

- **RESPONSE OF DAVID SEELEY IN OPPOSITION TO EXPEDITED MOTION FOR PRELIMINARY INJUNCTION;**
- **UNSWORN DECLARATION FOR PROOF OF SERVICE; AND**
- **PROPOSED ORDER,**

to be served and filed electronically with the Clerk of the Bankruptcy Court through ECF, and that the Bankruptcy Court, via ECF, will send an electronic notice of the filing to all parties registered to receive electronic service which constitutes service on the required parties as set forth in Fed. R. Bankr. P. 7005

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: August 18, 2022                    By: */e/ Jeffrey D. Klobucar*
                                                      Jeffrey D. Klobucar (#0389368)

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:

Local Motion MN, LLC

      Debtor.

Bankruptcy Case No. 21-31539 (KAC)

Chapter 11

Local Motion MN, LLC.

      Plaintiff,

v.

David Seeley,

      Defendant.

Adversary Case. No. 22-03018 (KAC)

## ORDER

This matter came before the Court on the Debtor's Expedited Motion for a Preliminary Injunction [ECF #7] (the "Motion") and the response of David Seeley in opposition to the same (the "Response"). Based on the Motion, the Response, the record, the arguments of counsel, and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED:**

1.      The Debtor's Motion is **DENIED**.

              BY THE COURT:

Dated: _____

_____
Katherine A. Constantine
United States Bankruptcy Court Judge